UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY JOHN LAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-1061-JES-JEH |
| | ) |
| JAMES RAY PEAL, | ) |
| | ) |
| Defendant. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 3) to Dismiss and Plaintiff's Response (Docs. 8, 9). For the reasons set forth below, the Motion (Doc. 3) is granted.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff is an attorney licensed to practice in the State of Minnesota. He was assigned by the McLean County state court to administer the estate of Emma Laver, his mother. In that capacity, he and his brother brought an action against Thomas Laver, who is the son of Plaintiff and step-son of Defendant, James Ray Peal. The action seeks recovery of $500,000 allegedly removed from the account of Emma Laver while she was in an assisted living home. Plaintiff, "as a concerned father," sent an email to his son's mother and his son's step-father offering to settle the dispute. Doc. 1, at 2.

On December 23, 2019, Plaintiff sent Defendant the following email:

> I am sending you this email as a concerned parent, as I don't believe Thomas may have shared this with you. Attached is the motion for summary judgment that includes the issues that will be determined by trial on 1/9/2020 at 10:00 am. I have also sent you the offer that is or was presented to Tom. If the Court makes findings that Thomas Laver did take the money from my mother's account (elder financial abuse), in all likelihood, the Court will turn the case over to the prosecution office

> to see if they wish to bring charges against Tom. The punishment is 5 years in jail. The last similar case tried in your area resulted in the defendant being committed to federal prison for 6 1/2 years. Taking into account Tom's past criminal record and current cases that are very near the facts of his case, Tom could get between 6 and 7 years in prison. If findings are made by the Court, it is likely the state or the feds would bring charges against him. In addition, there is evidence that Tom took out credit cards in my mom's name which could result in additional credit card fraud charges. The actual pleading starts on page 51. I am not going to put up the equity for a performance bond for obvious reasons. This is something someone else will have to do.

Doc. 1 at 2–3. Defendant responded on March 14, 2020, copying Patricia Peal, Defendant's wife:

> And, a happy life to you, Larry John, a concerned parent and a flummery member of the Minnesota Bar[.]
>
> As you can well imagine was during my fifty (50) years in the law enforcement community that I had ample opportunities to meet and sometimes eventually interview a wide variety of criminals. You name a particular type of criminal and I've probably spoken to them. A commonality amongst these individuals was their evil and vile nature and many were psychopaths or sociopaths. Psychopaths don't have a conscience, and also don't have much regard for their victims or for that matter, others. Initially, they may be charming, but after that not so much.
>
> Most have no guilt or remorse, some are arrogant and narcissistic, promiscuous, remember those days Larry John? Manipulation and being pathological liars that lack empathy. Sadder yet, psychopaths believe their own lies! You begin by stating that you're a "concerned parent" followed by the likelihood that my son will eventually be incarcerated for years, both state and federal and finally a desire for money. Not once have you ever been man enough to stand up and offer ANY assistance. In fact you've done your best to destroy Tom not help. And, through the years, contact with you has been nothing but destructive. And finally, you end your sad missive by mentioning that your mother (who told me she wanted nothing to do with you since I met her) had accumulated the absurd sum of $500,000 over her lifetime and you believe it!
>
> At your convenience, review the 1st paragraph above, over and over again.

Doc. 1 at 3–4. On May 9, 2020, Defendant sent another email to Plaintiff but did not copy anyone else. That email stated:

> Wow, TGIF certainly means a variety of different things to different people, but for me, it signals the weekly pickup of the junk and muck of odorous discards. The garbage truck quickly stopped and the driver immediately leaped out and handed me a white envelope. Now that was odd, but what surprised me more was that the

> driver was dressed in an official U.S. Postal uniform. Now, I've never seen that one before!
>
> After a quick glance at the envelope I noticed there no was no return address, but noted in red letters was, "Return Receipt Requested." Well, I've certainly seen that one before I thought. Well, you might ask who and "why" would send anyone a letter with no return address and a request for a receipt. Now here's a few suggestions.
> 1. Psychopaths
> 2. Mental wacky kooky birds
> 3. Disbarred, corrupt or bankrupt lawyers
> 4. Iron City facilities housing steeled hooligans
> 5. Hardened criminals and adulterers
> 6. Deviant disbarred ambulance chasers
> 7. Philanders X15
> 8. ADX inmates,Florence, Colorado
> 9. Voyeurs, peepers and scopophiliacs
> 10. Social scags
> Also, if any of you are wondering what happened to the "unopened" envelope, it landed in between two cow patties amongst other fetid miasmic material.
> Sent from my iPad

Doc. 1 at 6. Thereafter, Plaintiff filed this action for defamation. Defendant now moves to dismiss the action with prejudice. This Order follows.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements

of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### DISCUSSION

"To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 839 (2006) (citing *Krasinski v. United Parcel Service, Inc.,* 124 Ill.2d 483, 490, 125 Ill.Dec. 310, 530 N.E.2d 468 (1988), Restatement (Second) of Torts § 558 (1977)). In his Motion, Defendant argues: (a) Peal's copying of his own wife on the first email was privileged, and the second email was not published to any third party; (b) the alleged defamatory statements in Peal's emails are capable of an innocent construction; and (c) the alleged defamatory statements in Peal's emails are not factual assertions that can form the basis of a defamation claim. Doc. 4.

Plaintiff's Response to Defendant's Motion is a nonsensical mess. He begins by noting "[a]ll claims are based in Federal Statute and or case law" and "[t]hese claims have been litigated in every district." Doc. 9 at 3. As a licensed attorney whose defamation claim relies in part on proving his good reputation and professional ability, Plaintiff's reference to federal statutes or case law—in this diversity action alleging a state law claim under Illinois law—is curious, to say the least. Plaintiff then goes on to discuss Minnesota case law discussing defamation claims under Minnesota law. Yet since this diversity action was filed in Illinois and Plaintiff has not claimed that any other state's law should apply, Plaintiff's case law discussion is irrelevant. Plaintiff's Response is so cursory and nonsensical it leads to Court to question whether this case

4

was filed for an improper purpose, such as to harass Defendant or cause him to incur unnecessary expenses responding to a frivolous lawsuit. *See* Fed. R. Civ. P. 11(b)(1).

The Court agrees with Defendant that Plaintiff is unable to establish the publication element of his defamation claim. In reaching this conclusion, although it appears there is a lack of Illinois case law as it relates to spousal privilege in the context of defamation claims, the Court finds the inclusion of Defendant's wife in Defendant's email to Plaintiff constitutes a privileged communication. "Communications between spouses are so completely protected that under no circumstances can they be made the basis of an action for defamation. This is true although the matter communicated is known to be false and the purpose of the communication is altogether improper." Restatement (Second) of Torts § 592 (1977); *see also Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1162 (5th Cir. 1994) (applying Mississippi law); *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (applying New York law, holding "because George and Evelyn are spouses, the communications between them, which are the sole basis for Medcalf's defamation claim, do not constitute publication.").

Further, when given an opportunity to respond to this specific argument, Plaintiff chose to ignore it instead. That constitutes a waiver or forfeiture of the issue. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court…. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted). Finally, the Court sees no reason to excuse Plaintiff's waiver or forfeiture of this issue—he is a licensed attorney with 19 years of experience, not a pro se with a layperson's understanding of civil procedure.

In sum, this case is a frivolous waste of judicial resources. Although not raised in Defendant's Motion, the Court also has serious doubts that the amount in controversy in this case could plausibly exceed the $75,000 jurisdictional threshold under 28 U.S.C. § 1332, or even a single dollar. This entire case is about an email Defendant sent to Plaintiff and Defendant's wife. The worst offense Defendant is plausible guilty of is excessive use of a thesaurus. How could Plaintiff possibly suffer reputational damage from such an isolated communication? After all, it is unlikely Defendant's wife thought much of Plaintiff even before the email was sent. On the other hand, by filing this lawsuit, Plaintiff has now exposed to the public allegedly defamatory communications not previously seen by anyone other than Plaintiff, Defendant, and Defendant's wife.

Finally, should Defendant seek sanctions under Rule 11, the Court will consider the request, allow Plaintiff an opportunity to respond, and, if appropriate, set the matter for an in-person hearing. Any request for monetary sanctions should be supported by an itemized statement of fees and costs. The Court will further consider allowing costs for preparation of the Rule 11 motion itself.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 3) to Dismiss is granted. Any motion under Rule 11 shall be filed within 30 days of this Order. The Clerk is directed to close the case.

Signed on this 18th day of August, 2021.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge